In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00492-CR**
_____

**STEVEN ERICK HESTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR32007**

**MEMORANDUM OPINION**

A grand jury indicted Steven Erick Hester for the offense of possession of a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams, with the intent to deliver. A jury found Hester guilty of the lesser-included offense of possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams, enhanced by a prior felony conviction. Hester pleaded "true" to three enhancements alleged in his indictment. Hester elected to have the trial court assess punishment, and the trial

1

court sentenced Hester to twenty years of confinement and restitution of $180. Hester raises four issues on appeal in which he challenges the admission and exclusion of certain evidence. We affirm.

Evidence

Testimony of Deputy Stefan Fasolino

Deputy Stefan Fasolino testified that he is currently employed by the Galveston Police Department, but that in February of 2015, he was with the criminal interdiction unit of the Liberty County Sheriff's Office. Fasolino is familiar with methamphetamine through his training and work experience and he has completed about 1400 hours of continuing education training.

According to Fasolino, in January or February of 2015, he received credible information from an informant concerning drug trafficking in Liberty County and based on that intelligence he and other officers set up an observation of a residence in Cleveland. Ultimately, Fasolino and the SWAT team from the Liberty County Sheriff's Office, along with the entire criminal interdiction unit, executed a search warrant at the residence based on "probable cause through a purchase of narcotics through an informant." Fasolino testified that he seized evidence of drug trafficking upon execution of the search warrant at the residence.

2

Fasolino explained that at some point he interviewed the occupant of the residence and obtained information concerning who supplied the narcotics. Fasolino obtained a name of the supplier from the occupant of the home, the occupant was willing to make a call to the person named, and they set up a drug buy for a large amount of drugs. Fasolino agreed that he overheard the phone call about a drug buy to be delivered to the residence. According to Fasolino, while he was at the residence, a black pickup truck drove up that matched what Fasolino had learned from the occupant. Fasolino testified Steven Hester was the person who drove the truck. Fasolino explained that the officers conducted a "felony take-down of the vehicle[,]" ordered the people in the truck to get out with their hands visible, detained the occupants of the truck, and found a bag of methamphetamine that had fallen out of the truck when the passenger door of the truck opened. According to Fasolino, Hester was inside the truck on the driver's side, and Patricia Sharp was in the truck on the passenger's side.

According to Fasolino, the planned drug buy was originally for ten ounces at a price of $750 per ounce, which Fasolino agreed was a substantial amount, and later the amount was reduced to four ounces. Fasolino testified that he tested the drug evidence at the Sheriff's Office and it tested positive for methamphetamine, and it was 68 grams when he weighed it. Fasolino also agreed that the lab report indicated

3

that the amount seized weighed 58.07 grams. Fasolino identified State's Exhibit 1 as the bag in which he had sealed the methamphetamine obtained from Hester.

Fasolino believed that Hester was the owner of the truck. Fasolino also identified State's Exhibit 5 as an insurance document for the truck that showed Hester as the insured driver for the truck.

Testimony of Peggy Bourgeois

Peggy Bourgeois testified that she is the evidence custodian for the Liberty County Sheriff's Office. Bourgeois explained the procedure she followed regarding the receipt of the evidence in this case including the material she received from the lab after an analysis was performed on the evidence. Bourgeois agreed that the contents of the bag marked as State's Exhibit 1B was the evidence seized in this case on February 10, 2015.

Testimony of Rosa Carreno

Rosa Carreno testified she has been a forensic scientist for about five and a half years, and in February of 2015, she was employed with the Texas Department of Public Safety crime laboratory in Houston. Carreno agreed she performed an analysis on the contents of State's Exhibit 1B on June 30, 2015. According to Carreno, the substance weighed 58.07 grams, and the color tests and confirmatory instrumental analysis she performed indicated "the presence of methamphetamine."

4

Carreno identified State's Exhibit 2 as a true and accurate copy of her analysis and the report of her findings with one redaction.

The defense objected to State's Exhibit 2 "because of the redaction" but not to State's Exhibit 2A, an unredacted copy of Carreno's report. In a discussion at the bench, counsel for the State explained that the redaction was "the co-defendant's name which [was] covered in the motion in limine that the [S]tate filed." The court overruled the defense's objection, admitted State's Exhibit 2. The trial court found that the redaction did not contain relevant matters.

The defense called no witnesses.

Standard of Review

We review the trial court's admission of evidence for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736; *Layton*, 280 S.W.3d at 240. In addition, we uphold the ruling on the admission of evidence if it was correct on any theory of law supported by the record and applicable to the case, in light of what was before the trial court at the time the ruling was made. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v.*

*Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Hearsay Evidence

In two issues, Appellant challenges the admission of certain evidence he characterizes as hearsay. In his first issue, he argues that the trial court erred in admitting hearsay testimony regarding phone conversations that Deputy Fasolino overheard. In his second issue, he argues that the trial court erred in admitting certain portions of the phone conversations that the Deputy overheard that constituted hearsay testimony. According to Appellant, without the evidence of the phone conversations, the remaining evidence is insufficient to support a guilty verdict.

We first note that Appellant acknowledges that trial counsel did not make a Confrontation Clause objection at trial but, citing to *Guidry v. State*, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999), argues that the Court of Criminal Appeals has explained that the admission "of hearsay evidence against a criminal defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant." Because Appellant failed to make a Confrontation Clause objection at trial, he has waived error on this point. *See* Tex. R. App. P. 33.1(a); *Paredes v. State*, 129 S.W.3d 530,

6

535 (Tex. Crim. App. 2004) (a Confrontation Clause objection must be made in the trial court to preserve the complaint for review on appeal).

During direct examination of Deputy Fasolino, defense counsel repeatedly made hearsay objections to the testimony concerning the conversation Fasolino overheard. The trial court overruled the hearsay objections. Assuming, without deciding, that the trial court abused its discretion by admitting the complained-of evidence, we conclude that Hester's substantial rights were not affected. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b). Given the evidence before the jury, it is unlikely that the admission of the complained-of evidence had a substantial effect on the jury's verdict. *See Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999). The jury heard evidence that Deputy Fasolino was present when Hester drove to the residence, Hester exited the truck after the other officers ordered people out of the truck, the methamphetamine fell out of the truck, and Hester showed an insurance document listing him as an insured driver of the truck. Rosa Carreno testified that the substance seized weighed 58.07 grams and tested positive for methamphetamine. Even absent the complained-of evidence, the testimony from the witnesses at trial and the other evidence supports Hester's conviction. After examining the record as a whole, we have fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See id.*; *see also Taylor v. State*, 268

7

S.W.3d 571, 592 (Tex. Crim. App. 2008); *Schutz v. State*, 63 S.W.3d 442, 444-46 (Tex. Crim. App. 2001). We overrule Hester's first two issues challenging the admission of the testimony concerning the phone conversations.

"Rule of Optional Completeness"

In his third issue, Appellant argues that the trial court erred by refusing to admit an unredacted copy of the lab report after a redacted copy had been offered by the State and admitted. According to Appellant, because the State chose to introduce part of the lab report, the remainder of the lab report was admissible under the rule of optional completeness.

Texas Rule of Evidence 107, the "rule of optional completeness," is a rule of "admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007) (citing *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977)). "It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Id.* (citing *Cerda v. State*, 557 S.W.2d 954, 957 (Tex. Crim. App. 1977)). "The plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Sauceda v.*

8

*State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (citing Tex. R. Evid. 107). The purpose of the rule is "to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *See Walters*, 247 S.W.3d at 218.

During direct examination of Rosa Carreno, the State introduced State's Exhibit 2, the redacted lab report. Carreno testified that the lab report showed that the evidence tested positive for methamphetamine and weighed 58.07 grams. The defense objected to State's Exhibit 2 "because of the redaction[,]" but not to Exhibit 2A, the unredacted version of the report. The State explained that the name of Hester's co-defendant had been redacted on Exhibit 2, as previously addressed in the motion in limine. The trial court overruled the defense's objection, explained that it did not find that the redacted material was relevant, and admitted the redacted lab report.

After the State rested, the defense requested that the trial court reconsider admitting Exhibit 2A. The State objected to the unredacted copy of the report, Exhibit 2A, on the basis of hearsay and relevance. The trial court found that Exhibit

2A was not probative or relevant to any issue in the case and overruled the defense's request.[1]

In this case, there was no showing either that the unredacted lab report was necessary to correct a false or incorrect impression of the evidence. *See Sauceda*, 129 S.W.3d at 123. Hester did not argue to the trial court and does not argue on appeal that admission of the unredacted lab report was "necessary to explain or allow the trier of fact to fully understand the part offered" by the State. *See* Tex. R. Evid. 107. Rather, Appellant argues that the State's objections to the unredacted report "clearly shows an intent by the State to conceal evidence in order to facilitate its false argument that no one possessed the methamphetamine other than Appellant."

We cannot say the trial court's decision to exclude the unredacted lab report was outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736. The record does not support Appellant's assertion that, by offering the redacted lab report, the State intended to create a false impression that no one other than Appellant possessed methamphetamine. The Deputy testified that Hester was in the truck on the driver's side, that Patricia Sharp was in the truck on the passenger side, that the methamphetamine "fell out of the passenger door[,]" that he believed Hester

---

[1] The defense also offered into evidence an indictment for Patricia Sharp. The trial court denied the evidence as having no probative value. Appellant does not challenge the trial court's ruling on this evidence on appeal.

was the owner of the truck, and that Fasolino got the methamphetamine at the scene from Hester. Because the jury heard testimony that another person was with Hester in the truck, Appellant's argument that the State intended to create a false impression finds no support in the record. *See Stevens*, 235 S.W.3d at 740. We overrule Appellant's third issue.

Proper Jury Argument

In his final issue on appeal, Appellant argues that during closing argument, counsel for the State made a "blatantly false statement[]" that compounded the trial court's error in denying the unredacted lab report. Appellant urges this Court to consider this issue along with the issue concerning the rule of optional completeness because "they involve the same evidence[.]" Although Appellant acknowledges that a co-defendant's guilty plea is not normally admissible to exculpate a defendant, Appellant nonetheless argues that the State's failure to correct a known "false argument[]" violated Appellant's due process rights to a fair and impartial trial. Hester concedes that his attorney did not object to the State's argument at trial, but Hester argues that he need not have preserved error because the State's argument was so prejudicial that an instruction to disregard the argument could not cure the harm.

During closing argument, counsel for the State argued in relevant part:

[The defendant's] the one that showed up. Nobody else. Nobody else came driving up in the same car that was described in approximately the same time with the same description that was given the officer.

I mean, my God, he wants you to think just circumstances and it was somebody else's. It was the other person's in the car. Really?

Proper areas of jury argument include: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to opposing counsel's argument; or (4) a plea for law enforcement. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). A defendant forfeits his right to complain on appeal about an improper jury argument if he fails to object to the argument or to pursue his objection to an adverse ruling. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). If a trial court sustains an objection asserting an improper jury argument, to preserve error on appeal, the complaining party must additionally request an instruction to disregard an offending argument if such an instruction could cure the prejudice. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If the prejudice arising from an erroneous jury argument is incurable, the complaining party must move for a mistrial. *Id.*

In this case, the defense made no objection, did not request an instruction to disregard, and did not move for a mistrial. Therefore, Appellant failed to preserve error on this point. *See Threadgill*, 146 S.W.3d at 670; *McGinn*, 961 S.W.2d at 165. We review unpreserved error only if the error is so egregious and created such harm

that the appellant did not receive a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). A harm evaluation entails a review of the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel and other relevant information. *Id.*

Even assuming Appellant had preserved error, we find it has no merit. As we have explained, the jury heard testimony that Patricia Sharp was a passenger in the vehicle and that Hester was driving. Appellant has not cited to any evidence in the record that anyone other than (or in addition to) Hester possessed the drug, and his argument that the State made a "false argument[]" appears to rely on evidence outside the record. *See* Tex. R. App. P. 38.1(i). Neither has Appellant demonstrated egregious harm. *See Almanza*, 686 S.W.2d at 171. For these reasons, the trial court would not have erred in denying an instruction to disregard or a motion for a mistrial. *See Young v. State*, 137 S.W.3d 65, 70-71 (Tex. Crim. App. 2004) (explaining requirements for an instruction to disregard and motion for mistrial). Accordingly, we overrule Appellant's fourth issue.

Having overruled all issues, we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

13

Submitted on August 20, 2018
Opinion Delivered August 29, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.